# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| DAVID PATRICK SEILHEIMER | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

**FILED**

FEB 13 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

2:18 - MJ - - 36   EFB

## CRIMINAL COMPLAINT

I, James Williams the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   December 18, 2017 – February 7, 2018   in the county of   Sacramento   in the

Eastern   District of   California  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4)(B), | Knowingly possess visual depictions of minors engaged in sexually explicit conduct. |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

James Williams, Special Deputy U.S. Marshal
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   February 13, 2018

_____
*Judge's signature*

City and state:   Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, James Williams, being duly sworn, depose and state:

1. I am a Detective with the Sacramento County Sheriff's Department (SSD), presently assigned to the Sacramento Internet Crimes Against Children (ICAC) Task Force. I have been assigned to the Sacramento ICAC Task Force since August 2001. I have been employed by the SSD since April 1991. In August 2006, I was cross designated as a Special Deputy United States Marshal. As part of my daily duties as a detective, I investigate child exploitation and child pornography crimes including the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252. I have received training in the area of child pornography and child exploitation and as part of my duties have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have attended numerous courses in the investigation of child sexual exploitation, child pornography, and online child sexual exploitation.  In the course of my duties, I have been the investigating officer and affiant of over 100 applications for search warrants relating to numerous child pornography investigations.

2. I also have taught classes on Internet security, online child exploitation, as well as social networking sites, such as MySpace and Facebook to both law enforcement and civilians. I have received extensive training in the areas of computers and computer forensics, and I am considered a subject matter expert in high technology crimes and child exploitation. I have certifications from the Robert Presley Institute of Criminal Investigation in the investigation of High Technology Crimes. As a subject matter expert, I have assisted with the development of California Peace Officer Standards and Training (POST) telecourses for these subjects. I have also

17-424617

1

written and distributed, nationwide, several papers regarding investigations of Peer to Peer (P2P) file-sharing investigations.

3. This Affidavit is made in support of an application for an arrest warrant for DAVID PATRICK SEILHEIMER, currently in custody in the Sacramento County Main Jail, 651 "I" St., Sacramento, CA 95814 (hereinafter, the "SUBJECT").

4. I believe that there is probable cause that the SUBJECT has violated 18 U.S.C. § 2252(a)(4)(B), which makes it a crime to knowingly possess, or access with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct, and such depiction is of such conduct.

5. I am familiar with the information contained in this Affidavit based upon my experience and training, my conversations with other law enforcement officers who investigate child pornography crimes, and my own investigation.

6. Because this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that the SUBJECT has violated 18 U.S.C. § 2252(a)(4)(B). Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

17-424617

2

### Definitions

7. "Child Pornography" is defined in 18 U.S.C. § 2256(8), as any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

8. As used in this Affidavit, "child erotica" means materials or items that are sexually arousing to certain individuals but that are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

9. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. 18 U.S.C. § 2256(5).

10. "Minor" means any person under the age of eighteen years. 18 U.S.C. § 2256(1).

11. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. 18 U.S.C. § 2256(2).

17-424617

3

## <u>The Internet and Definitions of Technical Terms Pertaining to</u>
## <u>Computers</u>

12. As part of my training, I have become familiar with the Internet (also
commonly known as the World Wide Web), which is a global network of
computers[1] and other electronic devices that communicate with each other
using various means, including standard telephone lines, high-speed
telecommunications links (e.g., copper and fiber optic cable), and wireless
transmissions including satellite. The Internet is a means and facility of
interstate commerce.

13. Set forth below are some definitions of technical terms, used throughout
this Affidavit, pertaining to the Internet and computers more generally.

    a. <u>Client/Server Computing</u>: Computers on the Internet are identified
by the type of function they perform. A computer that provides
resources for other computers on the Internet is known as a server.
Servers are known by the types of service they provide; that is, how
they are configured. For example, a web server is a machine that is
configured to provide web pages to other computers requesting
them. A client computer is a computer on the Internet that is
configured to request information from a server configured to
perform a particular function. For example, if a computer is
configured to browse web pages and has web page browsing
software installed, it is considered a web client.

    b. <u>Compressed file</u>: A file that has been reduced in size through a
compression algorithm to save disk space.  The act of compressing a
file will make it unreadable to most programs until the file is
uncompressed.

---

[1] The term "computer" is defined by 18 U.S.C. § 1030(e)(1) to mean "an electronic, magnetic, optical,
electrochemical, or other high speed data processing device performing logical, arithmetic, or storage
functions, and includes any data storage facility or communications facility directly related to or
operating in conjunction with such device, but such term does not include an automated typewriter
or typesetter, a portable hand held calculator, or other similar device."

17-424617

4

c.   Computer system and related peripherals, and computer media: As
     used in this Affidavit, the terms "computer system and related
     peripherals, and computer media" refer to tapes, cassettes,
     cartridges, streaming tape, commercial software and hardware,
     computer disks, disk drives, monitors, computer printers, modems,
     tape drives, disk application programs, data disks, system disk
     operating systems, magnetic media floppy disks, hardware and
     software operating manuals, tape systems and hard drives and
     other computer-related operation equipment, digital cameras,
     scanners, in addition to computer photographs, and other visual
     depictions of such Graphic Interchange formats, including but not
     limited to, JPG, GIF, TIF, AVI, and MPEG.

d.   Digital device:  includes any electronic system or device capable of
     storing and/or processing data in digital form, including: central
     processing units; laptop or notebook computers; personal digital
     assistants; wireless communication devices such as telephone
     paging devices, beepers, and mobile telephones; peripheral
     input/output devices such as keyboards, printers, scanners,
     plotters, monitors, and drives intended for removable media;
     related communications devices such as modems, cables, and
     connections; storage media such as hard disk drives, floppy disks,
     compact disks, magnetic tapes, and memory chips; and security
     devices.

e.   Domain Name: Domain names are common, easy to remember
     names associated with an Internet Protocol address (defined below).
     For example, a domain name of "www.usdoj.gov" refers to the
     Internet Protocol address of 149.101.1.32.

f.   Hash value: A mathematical algorithm generated against data to
     produce a numeric value that is representative of that data.  A hash
     value may be run on media to find the precise data from which the

17-424617

5

value was generated. Hash values cannot be used to find other
data.

g. <u>Image or copy</u>: An accurate reproduction of information contained
on an original physical item, independent of the electronic storage
device. "Imaging" or "copying" maintains contents, but attributes
may change during the reproduction.

h. <u>Internet Service Providers (ISPs) and the Storage of ISP Records</u>:
Internet Service Providers are commercial organizations that are in
business to provide individuals and businesses access to the
Internet. ISPs provide a range of functions for their customers
including access to the Internet, web hosting, e-mail, remote
storage, and co-location of computers and other communications
equipment. ISPs can offer a range of options in providing access to
the Internet including telephone based dial-up, broadband based
access via digital subscriber line (DSL) or cable television,
dedicated circuits, or satellite based subscription. ISPs maintain
records ("ISP records") pertaining to their subscribers (regardless of
whether those subscribers are individuals or entities) such as
account application information, subscriber and billing information,
account access information (often times in the form of log files), e-
mail communications, information concerning content uploaded
and/or stored on or via the ISP's servers, and other information,
which may be stored both in computer data format and in written
or printed record format. ISPs reserve and/or maintain computer
disk storage space on their computer system for their subscribers'
use. This service by ISPs allows for both temporary and long-term
storage of electronic communications and many other types of
electronic data and files. Such temporary, incidental storage is
defined by statute as "electronic storage." 18 U.S.C. § 2510(15). A
service provider that is available to the public and provides storage

17-424617

6

facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long-term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." 18 U.S.C. § 2711(2).

i.   Internet Protocol Address (IP address): Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 254. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISP's employ dynamic IP addressing, that is they allocate any unused IP addresses at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time, and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial up session. Once the session ends, the IP address is available for the next dial up customer. On the other hand, some ISP's, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that

does not change over a period of time and is typically assigned to a specific computer.

j.  Log file: Log files are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a Web site was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

k.  Malicious Software ("malware"): Software designed to infiltrate a computer without the owner's informed consent. The expression is a general term used by computer professionals to mean a variety of forms of hostile, intrusive, or annoying software or program code. Software is considered malware based on the perceived intent of the creator rather than any particular features. Malware includes computer viruses, worms, trojan horses, most rootkits, spyware, dishonest adware, crimeware, and other malicious and unwanted software.

l.  Metadata: Data contained in a file that is not usually associated with the content of a file but is often associated with the properties of the application or device that created that file. For example, a digital camera photograph often has hidden data that contains information identifying the camera that manufactured it and the date the image was taken.

m.  Trace Route: A trace route is an Internet debugging tool used to document the list of inter-connected computers between two computers on the Internet. A trace route will list the names and IP

addresses of computers that provide the physical link between two computers on the Internet. Trace routes are useful tools to help geographically identify where a computer on the Internet is physically located, and usually includes information about the registered owner of computers on the Internet.

n. Uniform Resource Locator (URL): The address of a resource or file located on the Internet, also called a "domain name".

o. Web site Hosting: Web site hosting provides the equipment and services required to host and maintain files for one or more web sites and to provide rapid Internet connections to those web sites. Most hosting is "shared," which means that multiple web sites of unrelated companies are on the same server in order to reduce associated costs. When a client develops a Web site, the client needs a server and perhaps a web hosting company to host it. "Dedicated hosting" means that the web hosting company provides all of the equipment and assumes all of the responsibility for technical support and maintenance of a Web site. "Co-location" means a server is located at a dedicated hosting facility designed with special resources, such as a secure cage, regulated power, a dedicated Internet connection, online security and online technical support. Co-location facilities offer customers a secure place to physically house their hardware and equipment as opposed to keeping it in their offices or warehouses, where the potential for fire, theft, or vandalism is greater.

## Computers and Child Pornography

14. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which

17-424617

9

child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based web sites to conduct business, allowing them to remain relatively anonymous.

15. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve three basic functions in connection with child pornography: production, communication and distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

   a. Production: Producers of child pornography can now produce both still and moving images directly from a common video or digital camera, including using a cellphone camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of

production does not leave as large a trail for law enforcement to follow.

b. <u>Communication and Distribution</u>: The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. In addition, the Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[2] to look for "footprints" of the web sites and images accessed by the recipient.

c. <u>Storage</u>: The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. 80 gigabyte or larger hard drives are now common.

---

[2] "Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a web site accessed by the user in order to allow the user speedier access to and interaction with that web site.

These drives can store thousands of high resolution images. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

### Probable Cause to Arrest the SUBJECT

16. I was investigating California computers that were actively sharing child pornography on the Internet within the Eastern District of California, which includes Sacramento County. I was in Sacramento County when I was conducting this investigation.

17. I was using a BitTorrent application which was modified to allow law enforcement to conduct single source downloads (downloads from a single IP address), and I downloaded approximately 53 files of either child pornography or child erotica from the IP address 108.250.58.194 on Monday, December 18, 2017, between 0520 hours and 0523 hours PST.

18. Several of these downloaded files were reviewed and are described below.

   a. Phantom Production 2002 Preteen Pedo Little Boys 5Yo To 12Yo Kids Childs Nude Kdv Pjk Rbv Shx Fenerbahce Rizm (3).jpg

      i. This is a color image showing a prepubescent boy, whose shorts and underwear are being pulled down to expose his penis. The focus of the image is on the child's penis.

   b. (pthc-jho-lolifuck) 10 yo with glasses sucks dads dick.jpg

      i. This is a color image showing a prepubescent girl with her mouth on an adult male's penis.

   c. 2 Cs Cute Little 12Yo Preteen Boy Playing With Self Naked Nude Pedo Young Child Sex Kdv Rbv Pjk2.jpg

      i. This is a color image showing a naked prepubescent boy sitting in a large red chair looking down towards his erect penis. The child has a white device in his hand which has a cord attached to it.

    d. Phantom Production 2002 Preteen Pedo Little Boys 5yo To 12yo Kids Childs Nude Kdv Pjk Rbv Shx Fenerbahce Rizmastar (4).jpg

      i. This is a color image showing a naked prepubescent boy who is sitting back with his legs spread and his right hand on his erect penis.

    e. 100000.jpg

      i. This is a color image showing a naked prepubescent girl who is bending over and looking back towards the camera. The child's genital area and anus are exposed to the camera view. A caption in the top right corner says "LS Models.com."

    f. Pictures from ranchi torpedo dloaded in 2009- pedo kdv kidzilla pthc toddlers 0yo 1yo 2yo 3yo 4yo 5yo 6yo 9yo tara babyj (5)a.jpg

      i. This is a color image showing a prepubescent girl, who does not appear to be older than 10 years of age with her open mouth over and around an adult male's erect penis.

19. All of these files were downloaded directly from a computer located at the IP address of 108.250.58.194 between the date and times listed.

20. Using www.Arin.net, I was able to determine that the IP address was assigned to AT&T Internet Services.

21. On December 27, 2017, I obtained a Search Warrant for the subscriber information for the IP address identified, signed by the Honorable Judge S. White, Sacramento County Superior Court and served it the same day.

22. On January 23, 2018, I received the requested information from AT&T Internet Services and saw that the subscriber was identified as:

Kathi Seilheimer

902 Del Paso Blvd Spc 43

17-424617

Sacramento, CA 95815-3527

23. I checked the Sacramento County Sheriff Known Person System ("KPF"), which showed that there was a subject named David Patrick Seilheimer, living at 902 Del Paso Blvd Space #43, Sacramento, CA 95815. David Seilheimer is a registered sex offender with a Colorado conviction for sexual assault on a child by one in a position of trust.

24. My review of the KPF system also showed that D. Seilheimer is currently on parole with an address of 902 Del Paso Blvd, Space #43, Sacramento, CA 95815. D. Seilheimer is also a registered sex offender and has listed this address as his address of record on 8-15-2017. His registration also states that he was living with his sister, Kathi Seilheimer.

25. A check of California Department of Motor Vehicles database showed that David P. Seilheimer had a 2000 Ford, CA Plate 6F34159 registered to 902 Del Paso Blvd, Spc 43, Sacramento, CA 95815. A check of the license plate reader system showed that this vehicle was a white Ford Pickup with a white camper shell.

26. On January 30, 2018, I spoke with Parole Agent E. Santos, who is D. Seilheimer's parole agent. He told me that D. Seilheimer lived at the 902 Del Paso Blvd, Space 43 address.

27. On February 5, 2018, I obtained a search warrant, signed by the Honorable Judge McCormick, Sacramento Superior Court, for the residence of 902 Del Paso Blvd, Space 43, Sacramento, CA 95815, D. Seilheimer's white Ford pickup, CA Plate 6F34159, any vehicles in the custody or control of David Seilheimer, and the person of David Seilheimer. This warrant was endorsed for Night Service.

28. On February 7, 2018, D. Seilheimer left the residence at approximately 0545 hours and a traffic stop was initiated for various vehicle code violations. D. Seilheimer was contacted and searched. I explained to D. Seilheimer that we had a search warrant for his residence and spoke with D. Seilheimer.

17-424617

14

29. While I spoke with D. Seilheimer, I asked him if he had a computer at his house and he stated that he had a laptop and a Kindle. I asked D. Seilheimer if anyone other than him used the laptop and he told me that a friend of his named "Tim" would sometimes come over and use it as well as use the Internet. D. Seilheimer also told me that "Tim" had passed away in August 2017.

30. While his vehicle was being searched, other investigators executed the search warrant at the residence and contacted his sister, Kathi Seilheimer. D. Seilheimer agreed to drive back to his residence with us after his vehicle was searched.

31. At the residence, D. Seilheimer, who was never handcuffed or placed into a police vehicle, sat with his sister outside of the residence.

32. D. Seilheimer told me that he had the following digital devices:

    a. Laptop located in kitchen, Item A-1

    b. Kindle tablet, located in kitchen, Item A-2

    c. Tablet, located in D. Seilheimer's bedroom, Item C-1

33. Investigator Vasiliou located files of Child Pornography on both the HP laptop (Item A-1) and the Lenovo tablet, (Item C-1), as well as deleted files of Child Pornography on a Micro SD card located in D. Seilheimer's bedroom (Item C-2).

34. I showed D. Seilheimer the Lenovo Tablet (Item C-1) and he identified it as being his.

35. I spoke with D. Seilheimer, after he waived his *Miranda* rights, and explained to him that we had found files of Child Pornography on the Lenovo tablet (Item C-1). D. Seilheimer admitted to using his tablet to search for and download Child Pornography. D. Seilheimer stated that he used a BitTorrent application on his tablet to do this.

36. D. Seilheimer's Parole Agent E. Santos was present at the Search Warrant and he told me that he would place a parole violation hold on D.

Seilheimer immediately. D. Seilheimer was transported to the
Sacramento County Main Jail and booked on the parole hold.

37. I reviewed the crime report for D. Seilheimer's original arrest, which was
in Colorado Springs, CO. I saw that D. Seilheimer had molested his step-
daughter, starting when she was approximately 8 years old. The victim
indicated that D. Seilheimer had sexually molested her from age 8 and the
last time was just over a week prior to the victim reporting the crime. The
victim was 18 when she reported the molest. Also indicated within the
Colorado Springs Police report were initial reports that D. Seilheimer had
files of Child Pornography on computers at his residence. However, D.
Seilheimer was not charged with possession of child pornography.

38. D. Seilheimer was convicted of one felony count of sexual assault on a
child by one in a position of trust. He was sentenced to two years prison
for the felony.

39. Investigator G. Vasiliou created an Encase image of the Micro SD card
that was found in the Lenovo Tablet (Item C-1) and provided that to me. I
used Griffeye Analyze and categorized the files of suspected Child
Pornography that were on the Micro SD card. I also reviewed the Encase
image and saw that there were items indicating that a BitTorrent client
had been installed.

40. Approximately 210 images and 182 videos depicting suspected Child
Pornography were found on the Micro SD card. These files had file
creation dates ranging from 6-14-2016 to 9-3-2017.

41. The following are a sampling of the files of suspected Child Pornography
that were found within the Downloads folder on the Micro SD card
removed from the Lenovo Tablet (Item C-1):

   a. 2024057.jpg

      i. This is a color image showing a naked prepubescent girl, who
         does not appear to be older than 10 years of age. The girl is
         on her hands and knees on a bed and has her buttocks and

17-424617

16

genital area are facing towards the camera. There is a yellow clothing item on the bed near the child.

    ii. The file path for this file was \Download\61416\10yo Alia & 12yo Lucy

    iii. The file creation date for this file was 6/14/2016  6:19:26 PM

b. boy11.mpg

    i. This was a color video, approximately 9 minutes and 37 seconds in length, that starts with several prepubescent boys laying on the ground near each other masturbating. The video then cuts to a naked prepubescent boy, who does not appear to be older than 10, kneeling over another prepubescent boy who is laying face down next to the others who are masturbating. The prepubescent boy who is kneeling appears to be attempting to penetrate the boy laying on his stomach. The video shows the boys attempting to penetrate each other anally as well as orally copulating each other as it progresses. The entire video was not reviewed.

    ii. The file path for this file was \Download\61416\PTHC TIEM.

    iii. The file creation date for this file was 2/26/2017  5:46:00 AM

c. 【ロリータ】（洋物）小学生 Pthc - New 2007 - 0606 Vhs - Man and two lesbian girls 10yo and 12yo.avi

    i. This was a color video, approximately 51 minutes and 9 seconds in length, which shows a prepubescent girl who is undressing in a bathroom. The camera moves slightly as if it's being handheld and zooms in when the child is down to her panties, focusing on her genital area. When the child removes her panties, the camera zooms in towards her

genital area again. The child then gets into the bathtub and begins to fill the tub with water. The video cuts to show the camera focusing on the child's breasts and then genital area while she stands in the water. Due to the length, I skipped to another random part of the movie and saw that there was an adult male who was kneeling next to a naked prepubescent girl. The male was masturbating and touching the child's body. The remainder of the video was not reviewed.

    ii. The file path for this video was \Download\61416\WebVideo Collection\web video collection

    iii. The file creation date for this file was 2/22/2017  7:30:48 AM

d.  pthc 9yo.avi

    i. This was a color video, approximately 2 minutes and 1 second in length. The video starts showing a naked prepubescent girl who is bound with cloth around each of her ankles and her legs raised up into the air. There is a black cloth covering the view of the child from just above her stomach. The camera focuses on the child's genital and anal area and an adult male's penis is shown anally penetrating the child. Based upon the body size of the child, she does not appear to be older than 10 years of age.

    ii. The file path for this file was \Download\50115

    iii. The file creation date for this file was 9/3/2017  1:40:52 PM

e.  isa-024-108.jpg

    i. This was a color image showing a naked prepubescent girl who is laying on her side with her legs bent at the knees and her buttocks and genital area visible to the camera. The child is laying on a rocky beach with water in the background and has a black fish net type material draped over her body partially covering her genital area. There is a caption in the top right

corner that says "LS Island". The child's genital area is visible to the camera.

    ii.  The file path for this file was \Download\61416\Model 8Yo Toples\Preteen

    iii.  The file creation date for this file was 9/3/2017  11:51:44 AM

f.  7.jpg

    i.  This was a color image showing 9 separate images within the image. Eight of the images show a prepubescent girl, in which three of them show her restrained with rope. In three images, the child's genital area is visible and in two other images the child has an adult male with an erect penis in front of her.

    ii.  The file path for this file was \Download\50115\uuu

    iii.  The file creation date for this file was 3/19/2017  6:59:28 AM

42. Based upon your Affiant's previous investigative experience related to child pornography investigations, including investigations of subjects who have shared and distributed child pornography via the Internet that I have been the investigating officer of, your Affiant is aware that individuals who share and distribute child pornography are often child pornography collectors who have escalated their activity from anonymously obtaining free images of child pornography widely available in various locations on the Internet to proactively distributing images they have collected, often for the purposes of trading images of child pornography with others as a method of adding to their own collections. Individuals involved in the distribution of child pornography are also known to continue to obtain free images of child pornography found elsewhere on the Internet, e.g., in newsgroups and on "free" web sites.

43. Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are

certain characteristics common to individuals involved in the collection and receipt of child pornography:

   a.  Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

   b.  Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

   c.  Collectors of child pornography almost always possess and maintain their "hard copies" of child pornography material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

   d.  Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and

are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

17-424617

21

## Conclusion

44. Based upon the above information, there is probable cause to believe that the SUBJECT has violated 18 U.S.C. § 2252(a)(4)(B), which, among other things, make it a federal crime for any person to knowingly possess visual depictions of minors engaged in sexually explicit conduct.

_____
JAMES WILLIAMS
Special Deputy United States Marshal
Sacramento ICAC Task Force

Approved as to form.

_____
ROGER YANG
ROSANNE L. RUST
Assistant United States
Attorneys

Subscribed and sworn to before
me this _13th_ day of February
2018

_____
EDMUND F. BRENNAN
United States Magistrate Judge
Eastern District of California
Sacramento, California